,UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

PANDESSA MORVANT                    CIVIL ACTION NO. 12-CV-2716

VERSUS                              JUDGE DOHERTY

COMMISSIONER,  SOCIAL SECURITY   MAGISTRATE JUDGE HANNA

## REPORT AND RECOMMENDATION

Before the court is an appeal of the Commissioner's finding of non-disability.

Considering the administrative record, the briefs of the parties, and the applicable

law, it is recommended that the decision of the Commissioner be REVERSED AND

REMANDED for further action.

### Background

The claimant Pandessa Morvant applied for Social Security Disability

benefits under Title II and Title XVI on July 12, 2010. [Tr. 111[1]] In both

applications, she alleged disability beginning January 10, 2010.  She described

femoracetabular impingement syndrome (FAI) and high blood pressure problems.

[Tr. 134] The appellant alleges she stopped working because of these conditions

on January 10, 2010, and she has not sought other employment since that date.

---

[1]The administrative record and the transcript of the administrative hearing are made a part
of the record at Rec. Doc. 7-1.  Pages are numbered at the bottom right corner, and transcript
references will be made in this document as Tr. ___.

Morvant's application for benefits was denied on October 14, 2010.  She requested a hearing on November 3, 2010, and a hearing was held before Administrative Law Judge W. Thomas Bundy on April 19, 2011.  The record was kept open after the hearing to allow for submission of results of a scheduled diagnostic test referenced at the hearing, and on June 15, 2011, ALJ Bundy rendered an unfavorable decision, denying benefits. [Tr.5-19]

Morvant sought review with the Appeals Council, offering additional evidence and argument for consideration by the council, including documentation of post-hearing diagnostic testing.  Confirming its receipt and consideration of the supplemental material, the Appeals Council denied her request on August 24, 2012, finding that the arguments and additional evidence presented did not provide a basis for changing the ALJ's decision. [Tr. 4] Thus, the ALJ's denial of benefits to Morvant is the "final" decision of the Commissioner. This appeal timely followed, with Morvant seeking judicial review of the decision pursuant to 42 U.S.C. §405(g). [Rec. Doc. 1]  She is represented by counsel on this appeal. The Commissioner has filed an opposition. [Rec. Doc. 9 ]

## APPLICABLE  LEGAL STANDARDS  AND  SCOPE OF REVIEW

Any party, after any adverse final decision of the Commissioner may obtain a review of the decision by a civil action. 42 U.S.C. 405(g). This court's review of

the Commissioner's decision that the claimant is not disabled is limited to determining whether that decision was supported by substantial evidence and whether the proper legal standards were applied in reaching that decision.  *Alfred v. Barnhart*, 181 Fed. App'x 447, 449 (5th Cir. 2006); *Boyd v. Apfel,* 239 F.3d 698, 704 (5th Cir. 2001).  The ALJ is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible, and any findings of fact that are supported by substantial evidence are conclusive and must be affirmed.  *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).

'Substantial evidence' is such relevant evidence as a responsible mind might accept to support a conclusion; it is more than a mere scintilla and less than a preponderance.  *Boyd v. Apfel,* 239 F.3d at 704; *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).  A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision.  *Boyd v. Apfel,* 239 F.3d at 704.  Finding substantial evidence does not involve a search of the record for isolated bits of evidence that support the ALJ's decision; instead, the entire record must be scrutinized as a whole.  *Singletary v. Bowen*, 798 F.2d at 823. In applying this standard, the court may not re-weigh the evidence in the record, try the issues *de novo,*  or substitute its judgment for that of the ALJ, even

-3-

if the evidence weighs against the ALJ's decision.  *Boyd v. Apfel,* 239 F.3d at 704; *Carey v. Apfel*, 230 F.3d at 135; *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).  To determine whether the decision to deny social security benefits is supported by substantial evidence, the court weighs the following factors: (1) objective medical facts; (2) diagnoses and opinions from treating and examining physicians; (3) plaintiff's subjective evidence of pain and disability, and any corroboration by family and neighbors; and (4) plaintiff's age, educational background, and work history. 42 U.S.C.A. §405; *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995).  Any conflicts in the evidence regarding the claimant's alleged disability are to be resolved by the administrative law judge, not the reviewing court.  *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).

In determining whether a claimant is disabled, the ALJ uses a five-step sequential process, which requires analysis of the following:  (1) whether the claimant is currently engaged in substantial gainful activity (i.e., whether the claimant is working); (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals the severity of an impairment listed in 20 C.F.R., Part 404, Subpart B, Appendix 1; (4) whether the impairment prevents the claimant from doing  past relevant work (i.e., whether the claimant can return to his old job); and (5) whether the impairment prevents the claimant

-4-

from doing any other work. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005);

*Masterson v. Barnhart*, 309 F.3d 267, 271-72 (5th Cir. 2002); *Newton v. Apfel*, 209

F.3d 448, 453 (5th Cir. 2000).  See, also, 20 C.F.R. § 404.1520.

If the ALJ determines that the claimant is disabled at any step, the analysis

ends.  20 C.F.R. § 404.1520(a)(4). If the ALJ cannot make a determination at any

step, he goes on to the next step.  20 C.F.R. § 404.1520(a)(4). When assessing a

claim for disability benefits in the third step, the medical evidence of the

claimant's impairment is compared to a list of impairments presumed severe

enough to preclude any gainful work.  *Sullivan v. Zebley*, 493 U.S. 521, 525, 110

S.Ct. 885, 107 L.Ed.2d 967(1990).  If the claimant is not actually working and his

impairments match or are equivalent to one of the listed impairments, the ALJ is

required to "consider the combined effect of all of the individual's impairments

without regard to whether any such impairment, if considered separately, would be

of such severity." 42 U.S.C. §423(d)(2)(B).   The medical findings of the

combined impairments are compared to the listed impairment most similar to the

claimant's most severe impairment. *See Zebley*, 493 U.S. at 531, 110 S.Ct. 885.  It

is the claimant's burden to prove at step three that his impairment or combination

of impairments matches or is equivalent to a listed impairment. *Id.* at 530-31.  For

a claimant to demonstrate that his disorder matches an Appendix 1 listing, it must

meet all of the specified medical criteria.  An impairment that manifests only some of the specified criteria, no matter how severe, does not qualify. *Id.*  Ultimately, the question of equivalence is an issue  reserved for the ALJ.  *Spellman v. Shalala*, 1 F.3d 357, 364 (5th Cir. 1993).

Before going from step three to step four, the ALJ assesses the claimant's residual functional capacity. 20 C.F.R. § 404.1520(a)(4). This is a determination of the most the claimant can still do despite his physical and mental limitations and is based on all relevant evidence in the claimant's record. 20 CFR § 404.1545(a)(1). The claimant's residual functional capacity is used at the fourth step to determine if the claimant can still do his past relevant work, and at the fifth step, it is used to determine whether the claimant can adjust to any other type of work. 20 CFR § 404.1520(e).  When a claimant's residual functional capacity is not sufficient to permit him to continue his former work, then his age, education, and work experience must be considered in evaluating whether he is capable of performing any other work.  *Boyd v. Apfel,* 239 F.3d 698, 705 (5th Cir. 2001); 20 C.F.R. § 404.1520.  The testimony of a vocational expert is valuable in this regard, as such expert "is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed."

*Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986); *see also Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995).

The claimant bears the burden of proof on the first four steps, and then the burden shifts to the Commissioner on the fifth step to show that the claimant can perform  other substantial work in the national economy.   If the Commissioner makes the necessary showing at step five, the burden shifts back to the claimant to rebut this finding. *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

## ANALYSIS AND DISCUSSION

*The Administrative Record:*

Pandessa Morvant is married and the mother of three. [Tr. 111-12]  Details of the claimant's employment history appear in the record in several places. [Tr. 112, 124-25, 135, 147] She has worked as a cashier, clerical worker, office manager, personal care provider, hairdresser, and production worker. She has a 10th grade education, she completed cosmetology school, and she can read, write and understand the English language. [Tr. 133-35] She can handle money and balance a bank account.  In her application for benefits, she described "femoroacetabular impingement syndrome, high blood pressure" as the condition limiting her ability to work since January, 2010. [Tr. 40 ]

-7-

Most medical treatment documented in the record was sought and provided through LSU-University Medical Center Family Medicine Clinic and family physician Dr. Jeanne Theriot, beginning in 2008.  In March, 2009, Morvant underwent a stress test, EKG and ECHO, all of which were normal. [Tr. 231] In June, 2009, she underwent an abdominal CT scan, and a small cyst was found on her right ovary. [Tr. 218] In July, 2009, she complained of headaches, difficulty sleeping and hot flashes. [Tr. 242] By November, 2009, Morvant discussed with her doctors her complaints of ankle swelling, migraines, and blood pressure issues. Reference was made to obtaining an MRI of the brain. [Tr. 200, 208] In February, 2010, Morvant reported depression related to a son going to boot camp. [Tr. 240]

On April 3, 2010, Morvant reported for the first time complaints of intermittent left hip pain since the beginning of the year. [Tr. 289-90] Xrays from April 13, 2010 were interpreted in a report which noted prominent posterior acetabular wall and marginal acetabular osteophytes.  The radiologist stated "Femoroacetabular impingement syndrome should be considered in this young patient with hip pain." [Tr. 199] On review of the Xrays and the interpretive report, family physician Dr. Jeanne Theriot recorded her impression of FAI and recommended a referral to an orthopedic specialist. [Tr. 237]

Notes of Morvant's visits to the family medicine clinic in July, 2010 include complaints of left hip pain into both feet, the history of spurs on the hip and depression.  There is also a notation that the patient was not taking her medications as directed. [Tr. 284] Similar complaints were made to Dr. Theriot during July, 2010. [Tr. 236] A lumbar MRI was ordered, and results from August 17, 2010 showed mild degenerative changes without spinal stenosis.  A follow-up bone scan and/or MRI with contrast were suggested. [Tr. 258, 283]

In September, 2010, Morvant was seen again in the family medicine clinic, where she complained of left hip and back pain and leg weakness, with radiating pain into her left foot.  She denied numbness, and she noted no bladder/bowel dysfunction. [Tr. 281] Strength was noted to be 5/5 in the right lower extremity and 4/5 in the left.  No atrophy was noted, and Straight Leg Raises were noted as negative. [Tr. 282]

Dr. Kelly Scrantz performed a neurological evaluation of Morvant at the request of Dr. Theriot.  His report of September 24, 2010 [Tr. 255-57] documented the patient's complaints of low back pain for 1-1 ½ years with left leg pain the doctor found consistent with radiculopathy at S-1.  Morvant was noted to be a smoker for 25 years, with good appetite, pleasant mood and no shortness of breath.  She denied memory loss or depression.  Morvant rated her pain at 6/10, describing

it to be aching in nature.  She reported she occasionally took a Lortab to relieve

her symptoms. She denied numbness or tingling sensation in her left leg and she

confirmed she had no loss of bladder/bowel function. On physical examination,

the doctor noted normal coordination and fine motor movements.  The patient

moved around without difficulty, and no significant limp or imbalance were

present.  Morvant was tender to palpation in her low back.  She had decreased

forward flexion and lateral bending, with pain.  She had a positive SLR on the left;

normal on the right.  She had normal muscle strength and tone, without atrophy or

abnormal movement.  Deep tendon reflexes, Babinski and Hoffmann signs were

normal/negative, and the doctor recorded a normal sensory exam.  All other

systems were noted as negative.  Dr. Scrantz did not feel that Morvant's hip was

the cause of her symptoms. [Tr. 254] He opined that a herniated disc was the likely

cause, and he recommended diskectomy.

Also in September, 2010, Dr. Toyin Bamgbola performed a disability

examination  at the request of SSA. [Tr. 260-62]  He documented Morvant's

reports that she could dress and feed herself, stand at one time for thirty minutes;

stand for two hours out of a total of eight hours; walk for one block; sit for about

one hour; lift up to ten pounds; drive a car for thirty minutes, cook and do dishes.

Morvant confirmed she had no hospitalization and one emergency room visit in

the past two years.  On examination, Morvant was noted to be well-dressed, well-nourished, without acute respiratory distress.  She had good ambulation; she could get on/off the exam table and up/out of her chair without difficulty.  She had normal gait and she used no assistive devices.  She could hear at normal voice levels, her speech was 100% understandable, she had normal vision and normal heart sounds.  She had normal hand grip for strength (5/5), normal arm range of motion, normal cervical spine flexion and extension, and normal lateral flexion. Knee flexion was normal in both legs, she could lie straight back on the exam table, and she could walk on her heels.  She had mild difficulty with toe walking, and she could squat only 40%, which the doctor attributed partly to tight gym pants.  She had 5/5 motor performance examination, no unilateral muscle atrophy, and normal deep tendon reflexes.  No evidence of acute inflammation of any joints was noted and no ambulatory deficits were noted.  Blood pressure was noted to be fairly well controlled.

By November, 2010, Morvant's reports to Dr. Theriot focused on depression and medication management and shoulder pain complaints into her neck.  Dr. Theriot certified Morvant's mobility impairment to enable her to obtain a special license plate for her vehicle. [Tr. 296-98] On November 30, 2010, Morvant's attorney submitted a Medical Source Statement completed by Dr.

-11-

Theriot. [Tr. 264-267] In that statement, Dr. Theriot opined that Morvant could lift/carry up to 10 pounds occasionally in a competitive work setting.  She could sit/stand/walk without interruption 20-30 minutes at a time for a total of four hours in an 8 hour work period.  The doctor confirmed that Morvant needed no assistive devices for ambulation, but she stated for the first time that Morvant needed to elevate her legs intermittently to relieve pain and other symptoms.  She opined that Morvant would need to take unscheduled breaks every hour during a workday due to pain, fatigue and weakness/imbalance.  She estimated that Morvant would miss work or leave work early at least once a week.

By December 3, 2010, Morvant was reporting to family medicine clinic doctors that her back pain was controlled with current medications. [Tr. 274]

A full body bone scan performed December 14, 2010 revealed degenerative changes of the shoulder and knees, but no other abnormality. [Tr. 273] A lumbar MRI was scheduled in January, 2011, but it had not been completed at the time of the administrative hearing on April 19, 2011. [Tr. 270] On April 28, 2011, the lumbar MRI was performed and a normal impression was recorded.  The document contains an addendum, which notes "[O]n further review, there is a central disk protrusion with annular tear at L5-S1, which contacts the anterior sac

and sits adjacent to both exiting nerve roots." [Tr. 300] The report was made available to the ALJ for consideration before the issuance of his determination.

Also contained in the record is the October 13, 2010 Residual Functional Capacity assessment of the non-physician LeKeisha Duncan, wherein Ms. Duncan suggested that the claimant could occasionally lift/carry 20 pounds, frequently lift/carry 10 pounds, stand/walk(with normal breaks) about six hours of an 8 hour workday, frequently climb ramps/stairs, occasionally climb ladders, ropes, and scaffolds, frequently balance, and occasionally stoop/kneel/crouch/crawl. [Tr. 43-45]

*The Administrative Hearing:*

The administrative hearing was conducted on April 19, 2011, and the claimant appeared in person, represented by counsel. [Tr. 20-37]  At the start of the hearing, the ALJ admitted proposed exhibits 1A through 8F into evidence, along with a medication list, identified as 11E. [Tr. 22]  Exhibit 6F is characterized as a Medical Source Statement, and, although the signature is illegible, the ALJ assumed it to be that of Dr. Theriot. [Tr. 30]

The claimant testified that her last employment was January, 2010, at which time she worked behind a desk at a rental place.  She left after about five months to see if it would help resolve her back and hip problems but it did not.  She has

not sought other employment. [Tr. 23-24] In the past, she did hair for six years, and she did private care work for two to three years.  She described her symptoms to include tightness in her back with pains going down to her leg.  She also described pain in her shoulders, more on the left side.  No treatment has been helpful.  She indicated that Dr. Scrantz has recommended back surgery. [Tr. 24-26]   She understands that she will have back surgery and hip replacement[2]. She is 5'3" and weighs 180 pounds. [Tr. 29]

Morvant does nothing during the day.  She explained that she cannot lift or carry.  It hurts to sit too long or walk too much and it is hard to get in a position to fall asleep. [Tr. 26-27] While she at first indicated that she does not drive, the claimant admitted that she does drive, but she has older children who are also available to drive her around. [Tr. 27-28] Her younger child does the household chores.  Medication is helpful to her when she takes it, but she gets only partial relief. [Tr. 28]

The claimant continues to see Dr. Theriot for treatment, and she also goes to UMC in Lafayette.  She indicated that a lumbar MRI was scheduled for April 28, 2011.  The ALJ indicated that his decision would be deferred until he could review

---

[2]The record contains no detail regarding these procedures.

the result. [Tr. 31]  She also indicated she has another appointment in May, 2011, for scheduling of her surgery at Charity Hospital in New Orleans. [Tr. 32]

In response to questions from her attorney, the claimant testified that she is now ready to undergo surgery. [Tr. 34] She described recent falls in her home when she lost her balance due to loss of feeling in her left leg. [Tr. 35] She believes she could not sit, stand, or walk more than fifteen or twenty minutes at a time before she would need to vary her position. [Tr. 35]

At the hearing, the ALJ also elicited brief testimony from the vocational expert Lionel Bordelon. Relying on record Exhibit 4A, the VE opined that the claimant could perform the duties of her prior cashier, retail job and the personal care work. [Tr. 25]

*The Determination of the ALJ:*

The record  demonstrates that the ALJ followed the requisite five step sequence.  The ALJ found, at step one, that the claimant meets the insured status requirements of the Social Security Act through March 31, 2012, and she has not engaged in substantial gainful activity since January 10, 2010, the alleged onset date. [Tr. 10] At step two, the ALJ determined that the claimant has the severe impairments of degenerative disc disease, shoulder and feet problems and

-15-

hypertension disease (20 CFR 404.1520(c) and 416.920(c)). This finding is supported by the record and has not been challenged by the claimant.

At step three, the ALJ determined that the claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1(20 CFR 416.920(d), 416.925, and 416.926).  The determination was based on the ALJ's comparison of the claimant's signs, symptoms, and laboratory findings with criteria specified in the Listings of Impairments.  The ALJ noted that Listing 1.04, pertaining to disorders of the spine, requires evidence of nerve root compression, arachnoiditis, or lumbar stenosis, and he found no such evidence in the instant case. [Tr.11]  The claimant has not challenged this finding.

The ALJ found that the claimant has the residual functional capacity (RFC) to perform less than the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b), with the ability to lift/carry 20 pounds occasionally and 10 pounds frequently, stand/walk 6 hours of 8 and sit for 6 hours of 8.  He found she is able to climb ramps/stairs and balance frequently and climb ladders/ropes/scaffolds, stoop, kneel, crouch and crawl occasionally. [Tr. 11]  In arriving at the RFC, the ALJ acknowledged he considered all symptoms and the extent to which they can reasonably be accepted as consistent with the objective medical evidence and

other evidence.  He also followed the required two-step process to determine (1) whether there was an underlying medically determinable physical or mental impairment which could reasonably be expected to produce the claimant's pain and other symptoms, and (2) whether the claimant's reports concerning the intensity, persistence and limiting effects of her symptoms were credible and substantiated by the objective medical record. The ALJ noted that the claimant "has not generally received the type of medical treatment one would expect for a totally disabled individual." [Tr. 14] Further he noted the absence of any record indication that the claimant ever participated in recommended treatments, such as physical therapy.  The ALJ has also noted that the claimant's work history shows only sporadic work by the claimant, prior to the onset date, raising a question whether Morvant's continuing unemployment is actually due to medical impairments. The ALJ nevertheless concluded that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms, however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms was not credible to the extent they were inconsistent with the RFC. [Tr. 12] In arriving at that conclusion, the ALJ made specific references to the medical record and the representations

-17-

contained therein which contradict the claimant's hearing testimony. [Tr. 13-15] The claimant has challenged this finding.

At step four, the ALJ, with assistance from a vocational expert, found that the claimant has vocationally relevant past work experience as a cashier, retail clerk and personal care provider, which work does not require the performance of work-related activities precluded by the RFC. On that finding, the ALJ concluded that the claimant has not been under a disability from January 10, 2010, through the date of his decision on June 15, 2011. [Tr. 16] This finding is challenged by the claimant.

### ASSIGNMENT OF ERRORS

The claimant asserts generally that the ALJ erred in failing to find that she is disabled and entitled to benefits.  More specifically, the ALJ failed to properly weigh the treating source opinion of Dr. Jeanne Theriot, improperly relied on the opinion of a single decision maker, a non-doctor, to support his RFC assessment and the ALJ's finding that she can stand/walk for six hours out of an eight hour day despite the need for surgical intervention to alleviate chronic radiculopathy is not supported by substantial evidence due to the first two errors.

***I.  There is no error in the Commissioner's assignment of weight to the opinions of Dr. Jeanne Theriot.***

The decision reflects the ALJ reviewed and relied on significant  portions of the records of the claimant's primary treating physician.  The ALJ noted specific findings of the doctor and her record of complaints from the claimant.  He also noted the doctor's referral of the claimant for more specialized evaluation.  In fact, the only rejection by the ALJ of the opinions of Dr. Theriot were of her opinions he considered to be beyond the scope of her expertise as a family physician. [Tr. 13]

The task of weighing the evidence is in the sole province of the ALJ.  See *Chambliss v. Massanari*, 269 F.3d 520, 523 (5th Cir. 2001).  Even though a treating physician's opinions are not determinative, the opinion of a treating physician who is familiar with the claimant's impairments, treatments, and responses should be accorded great weight by the ALJ in determining disability. *Pineda v. Astrue*, 289 Fed. App'x 710, 712-713 (5th Cir. 2008), citing *Newton v. Apfel*, 209 F.3d at 455. When a treating physician's opinion regarding the nature and severity of an impairment is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, the ALJ must give that opinion controlling weight. 20 C.F.R. § 404.1527(c)(2).  See, also, *Loza v. Apfel*, 219 F.3d at 393.

If an ALJ declines to give controlling weight to a treating doctor's opinion, he may give the opinion little or no weight – but only after showing good cause for

doing so. *Thibodeaux v. Astrue*, 324 Fed. App'x 440, 443-444 (5th Cir. 2009).  Good cause may be shown if the treating physician's opinion is conclusory, unsupported by medically acceptable clinical laboratory diagnostic techniques, or is otherwise unsupported by the evidence. *Id.*  Before declining to give any weight to the opinions of a treating doctor, an ALJ must also consider the length of treatment by the physician, the frequency of his examination of the claimant, the nature and extent of the doctor-patient relationship, the support provided by other evidence, the consistency of the treating physician's opinion with the record, and the treating doctor's area of specialization, if any. *Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir. 2001); *Newton v. Apfel*, 209 F.3d at 456.

An ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion. *Qualls v. Astrue*, 339 Fed. App'x 461, 466 (5th Cir. 2009), citing *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987).  When a treating or examining physician's opinions are inconsistent with other substantial evidence in the record, the opinions are not entitled to any specific weight in the ALJ's decision.  *DeLeon v. Barnhart*, 174 Fed. App'x 201, 202 (5th Cir. 2006), citing *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994).  It is clear from the specific references in the decision that the ALJ did consider the opinions of all of Morvant's

treating and examining physicians, as well as all of the medical evidence in the record at the time of the hearing.

In the instant case, the record demonstrates, and the ALJ noted the sparse nature of Dr. Theriot's medical record relative to the claimant's back/hip complaints and treatment, her referral to a specialist who disagreed with Dr. Theriot's diagnostic impression of FAI, and the inconsistencies between Theriot's medical source statements and other record evidence, including the findings of the specialist Dr. Scrantz and Dr. Bamgbola, who conducted thorough examinations of the claimant and offered reports far more detailed than the often-illegible records of the general practitioner Dr. Theriot. [Tr. 12] On this record, this Court finds no error in the ALJ's assignment of weight to the opinions of Dr. Theriot.

## II.  The ALJ gave improper weight to the opinion of a single decision maker, a non-doctor, to support his RFC assessment.

"Residual functional capacity," as it is used in the regulations, is a term of art which designates the ability to work despite physical or mental impairments. *Carter v. Heckler*, 712 F.2d 137, 140 (5th Cir. 1983).  The RFC is determined by combining a medical assessment of an applicant's impairments with descriptions by physicians, the applicant, or others of any limitations on the applicant's ability to work. *Id.* The

RFC determination is reserved solely to the ALJ.  *See Ripley v. Chater*, 67 F.3d 552, 557(5th Cir. 2995); 20 CFR 404.1527(e)(2); SSR 96-8p.

In support of his RFC assessment in the instant case, the ALJ gave "considerable weight" to the "conclusions reached by the physicians employed by the State Disability Determination Services." [Tr. 14]    It is clear from the ALJ's decision that he assumed that LeKeisha Duncan (SDM), the generator of the exhibits referenced in the same paragraph is a medical doctor, and she is not. In so assuming, he committed error, and the Commissioner has acknowledged that fact.   As the claimant notes, SDM-completed forms are not "opinion evidence," and clearly the findings by Ms. Duncan are not medical opinions.  Standing alone, the error would be harmless, since the ALJ repeatedly referenced throughout his decision "a number of other reasons to reach similar conclusions" beyond the exhibits at issue. [Tr. 14] In the context of the larger decision of the ALJ in arriving at the RFC and making the Step Four determination, however, the paragraph at issue in the decision and other action by the ALJ warrant some scrutiny:

> The residual functional capacity conclusions reached by *the physicians* employed by the State Disability Determination Services also supported a finding of 'not disabled.'  Although those physicians were non-examining, and therefore their opinions do not as a general matter deserve as much weight as those of examining or treating physicians, those opinions do deserve some weight, particularly in a case like this in which there exist a number of other reasons to reach similar

-22-

conclusions(as explained throughout this decision.)  (Exhibits 3A and 4A) The Administrative Law Judge gives considerable weight to the opinions of *these physicians* as they are consistent with the medical evidence of record. [Emphasis added][Tr. 14]

Procedural perfection in administrative proceedings is not required, and a judgment will not be vacated unless a party's substantial rights have been affected. *Anderson v. Sullivan*, 887 F.2d 630, 634 (5th Cir. 1989).  Furthermore, procedural improprieties constitute a basis for remand only when the improprieties cast into doubt the existence of substantial evidence to support the ALJ's decision. *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988). In the instant case, what may have been a harmless error was compounded when the functional capacity conclusions set out in Exhibit 4A[3] were used by the ALJ in the questions posed to the vocational expert at the administrative hearing.[Tr. 25] The opinion of the expert was relied upon by the ALJ in reaching his decision on disability at Step Four. [Tr. 16]

The undersigned finds that the error by the ALJ relative to the Residual Functional Capacity assessment by the non-physician LeKeisha Duncan, at Exhibit 4A , and his "considerable" reliance on those opinions improperly cloaked with the 'physician' mantle, render the RFC deficient since it fails to comport with relevant legal standards.  For that reason the matter should be revisited.

---

[3]Exhibits 3A and 4A are the same.

### CONCLUSION AND RECOMMENDATION

It is well-established that "the ALJ has sole responsibility for determining a claimant's disability status." *Martinez*, 64 F.3d at 176, *citing Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990). As discussed above, this Court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. *Villa v. Sullivan*, 895 F.2d 1019, 1021(5th Cir. 1990).  In the instant case, the error by the ALJ relative to the Residual Functional Capacity assessment of the non-physician LeKeisha Duncan at Exhibit 4A and  his "considerable" reliance on the opinions contained therein based on the impression that they were physician opinions, render the RFC deficient since it fails to comport with relevant legal standards.  For that reason, the case should be remanded for a re-determination of the RFC.

Applying the appropriate review standard to the record of the instant case,

**IT IS THE RECOMMENDATION** of the undersigned that the decision of the Commissioner be REVERSED and REMANDED for a proper determination of the Residual Functional Capacity consistent with applicable legal standards .

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from receipt of this report and recommendation to file specific, written objections with the Clerk of

Court.  A party may respond to another party's objections within fourteen days after receipt of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of receipt, or within the time frame authorized by Fed. R. Civ. P. 6(b) shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plan error.  See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Signed in Lafayette, Louisiana, this 10th day of February, 2014.

_____
Patrick J. Hanna
United States Magistrate Judge